May I proceed? Good morning, Your Honor, and may it please the Court. My name is Tim Talkin. I'm with the Fraser Stryker Law Firm in Omaha, and I represent United of Omaha Life Insurance Company in this case. This case involves an appeal from a denial of benefits under an ERISA plan. Ms. Johnson sought long-term disability benefits under a plan governed by ERISA. Her claim was that she was diagnosed with chronic pain, depression, and fibromyalgia. United was the plan administrator and processed her claim. United submitted Ms. Johnson's claim to a peer review conducted by Dr. James Boskarden, a board-certified orthopedic surgeon, who concluded that the restrictions and limitations placed on Ms. Johnson by her treating physician, Dr. McDonald, were not supported by any objective testing or evidence. Did the peer review include any actual examination or just review of records? It did not. It was a records review. United then submitted Dr. Boskarden's review to Dr. James McClellan, who is Ms. Johnson's own surgeon, and Dr. McClellan confirmed that he agreed with Dr. Boskarden's opinion. He also testified in a statement under oath that he could not state that Ms. Johnson was fully disabled. Well, they pretty much disregarded her treating physician in this process, didn't they? Well, I don't know if they disregarded it. I think the issue was she placed certain restrictions and limitations on Ms. Johnson, and the issue from Dr. Boskarden's position, and I think from Dr. McClellan's position, was were those restrictions and limitations supported by any objective evidence, and they were not. And so to the extent that she placed restrictions and limitations, United did reach a different decision than the treating doctor based on the expert evidence from Dr. Boskarden and Dr. McClellan. There are two main issues I'd like to discuss with the court this morning. First, the abuse of discretion is the appropriate standard of review in this case, and second, United's claim should have been affirmed based on that deferential abuse of discretion because there was substantial evidence in the record which supported its denial. With respect to the standard of review, it's well established that ERISA grants ERISA allows a plan to grant discretion to a plan administrator to review claims, and that happened in this case through the grant of discretion in the Certificate of Insurance. The ERISA plan in this case consists primarily of two documents, the insurance policy and a 30-page Certificate of Insurance. That Certificate of Insurance is consecutively paginated, pages 1 through 30, and contains at page 30 of that document, which is page 62, I believe, of the Joint Appendix, a grant of discretion. The Certificate of Insurance is fully integrated into the policy. The policy states at page 12 of the Joint Appendix, the Certificate of Insurance is made part of this policy. So whatever is in the certificate is in the policy, and the policy is the ERISA plan in this case. In this case, the certificate grants discretion, therefore the policy grants discretion, the plan grants discretion. What is a Certificate of Insurance? So essentially the policy here, if you look at it, is two different documents. The policy basically has general terms. Colorado Real Estate is the plan sponsor, if you will. But it doesn't tell you anything about coverage. The Certificate of Insurance is specific to what coverage is provided. And so rather than redo a policy every time, you can simply redo a certificate. You can amend the plan by issuing a new certificate. Is there some body of law that, of insurance law, that tells us that a Certificate of Insurance is a booklet, for example, or it's a group of documents? In other words, if I'm looking at this page one of this booklet, and it says Certificate of Insurance, how do I know that that Certificate of Insurance includes the pages that follow, instead of simply the page I'm looking at? If you only looked at page one of the booklet, there would be no coverage. Because that Certificate of Insurance doesn't tell you anything about the coverage. For example, if you look at the table of contents to the booklet, it describes all sorts of different provisions of the certificate. That's why it's consecutively paginated pages one through 30. There's a front page and a back page, which clearly shows where the certificate begins and ends. If you just focus on the titles, which is the problem in this case that the district court committed, if you just look at the titles, the Certificate of Insurance, that page one, doesn't do anything. The only coverage that's provided is if you read it all together. Do you think that's clear? That would be clear to a typical insured? I do. I think if somebody were to read page one of the Certificate of Insurance, they would say this doesn't provide anything. You have to read it in context. I wouldn't say it's specific to ERISA. It's really a contract interpretation case at this stage, and it's what is the policy here? What is the certificate? I think under cardinal rules of contract interpretation, you've got to read everything together. You can't exclude or chop off certain parts of the certificate and say, well, that's not part of the policy. That's precisely what the district court did here. It said pages 28 through 30 is titled Summary Plan Description, so it's not part of the certificate. That's wrong for a number of reasons. First, the textual analysis, which is this whole thing is a certificate. Also, if you look at page 28 of the certificate, it specifically incorporates the entire certificate. It says this certificate is your Summary Plan Description. So the whole certificate is the SPD in this case, not just the last three pages. The district court erred in saying, well, this is titled Summary Plan Description, so I'm going to treat that as a separate document. In Gamboa, which is an A Circuit case, this court held that the titles are not dispositive. You've got to look really at the effect of it. In fact, if you were only to look at pages 28 through 30 of the certificate, it wouldn't comply with ERISA. The regulations require that certain disclosures be made. And again, if you only look at pages 28 through 30, all the disclosures are not in there. But elsewhere in the certificate, those disclosures are present, which shows that the entire certificate is the Summary Plan Description. They're one and the same, and if they're one and the same, it's in the plan. There's no conflict between the SPD and the policy. The policy, the plan grants discretion. How does the exercise of discretion play out in this particular dispute? As I understand it, and I don't understand a lot of things, there was both a short-term application and a long-term application or a permanent application. Do those have any relationship, one to the other, as we try to figure out what's right here? The short-term application, there are really two claims at issue, the short-term claim and the long-term claim. However, the plaintiff didn't appeal from the short-term claim. This case only relates to the long-term claim. But if she gets the long-term claim, she doesn't care about the short-term claim? She didn't appeal. That issue is not before the court. Okay. But how does the issue of depression fit in? This was confusing me. She was asking for depression consideration in the short-term but doesn't in the long-term. Right. I'm not exactly sure that that's correct. If you look at what the doctor said, Dr. McDonald, who filled out the long-term disability application form, the physician's statement, she identified anxiety and depression as her diagnosis. Now that's her usual physician? Correct. Okay. And so United looked at that issue. It did look at depression. But the reality is when Ms. Johnson's statement under oath, she said, I'm not making a claim for depression. In the long-term? Under the long-term claim. So at that point, that issue was really off the table, and I think the district court erred, that's one of the errors, when it said that United didn't consider that. Well, in fact, it didn't have to when she admitted, I'm not making a claim for that. That can't be errored. The district court also erred with respect to the standard review in finding that there were procedural irregularities which would have stripped United of its discretion. And that's a very high standard. This court has held that in order to strip a planned administrator, you have to establish that the decision was reached without reflection and judgment, on a whim. And that's clearly not the case here. And, in fact, the district court didn't even make that finding. Well, does this part of the claim, does this spring from Woo versus Deluxe, which is my opinion, which has now been pretty well discredited by my colleagues over time? It does spring from that, but there has been subsequent development in the case law. Buttram is a case that we cite which talks about what the standard really is now to establish the stripping of discretion under a procedural irregularity. And, again, the case law makes that a very high standard, and they simply didn't reach it here. And what the district court said, and I think this gets to some of the confusion, the court cited to procedural irregularities dealing with the short-term disability claim. But that claim is not at issue. It was never pled. It was never appealed. This is a long-term disability appeal. And, for example, the court said that United mishandled or misplaced records in the short-term disability claim. Well, what the court ignored is that two weeks later United reordered those records, got them all, and considered it on the long-term claim. So that can't be a procedural irregularity. The court also, at footnote 10, criticized United for focusing on Ms. Johnson's mental conditions but ignoring her physical conditions. But later in its opinion, at the addendum at page 33, it said that United focused only on her physical conditions and ignored her mental conditions. Completely, you know, in the same opinion, it's completely inconsistent. So these issues simply are not procedural irregularities. Furthermore, and the reality is United considered all of those claims. It considered depression. It considered her chronic pain and considered fibromyalgia and simply concluded that there was no objective testing supporting those. The court also criticized United for what it said was giving the plaintiff the runaround. And what that is essentially is when Ms. Johnson filed her appeal, United sent a letter to Ms. Johnson's attorney asking if she was going to submit additional evidence. He didn't respond. United sent another letter. He didn't respond. United sent a third letter. It said, hey, we want to review your claim. Are you going to submit any more evidence? He didn't respond until November 18th, two and a half months later. The court calls that giving plaintiff's counsel the runaround. I think that's providing due process. We don't want to review a claim if there's going to be more information coming in. So there simply is no evidence that United reached its decision without reflection and judgment that would strip it of discretion. With respect to the second issue, which is the merits of the claim, there was substantial evidence in the record that supported United's decision. The standard is very clear that United's decision had to be affirmed if it was supported by more than a scintilla but less than the preponderance of the evidence. Again, it's a very deferential standard of review. But it's not automatic. Oh, I agree. I agree. But the issue is not whether a reasonable person could or would reach the same decision. It's whether it could. And in this case, Your Honor, there's plenty of evidence to support United's decision. Ms. Johnson had fibromyalgia in 1999. She had back surgery in 2004 that admittedly left her with certain limitations and restrictions. Despite those conditions and diagnoses, she was able to continue working for many years without at her job in a sedentary capacity on a full-time basis. And I seem in a rebuttal time I'd like to reserve the rest of my time. Thank you, Mr. Falken. Mr. Anderson? Good morning. If I please the Court, my name is Terry Anderson. I represent Vicki Johnson with me today in court as my colleague Stephen Lathrop. Let me address first the question of the proper standard of review by the district judge in this case. As you know, the district judge, without a great deal of discussion, said that based upon the cases in this circuit, the Joby case and the Ringwald case, that the plan does not grant to the administrators the kind of discretion that the Supreme Court said had to be granted in the plan in the Firestone case. Here's our view of that. One, the documents are going to be read by the plan beneficiaries. These are certificates. In the policy-slash-certificate, it says, the insurance company says, we will send this information out to the beneficiaries. And that's the people who are reading it. Anybody reading this plan would, like the district judge said, view the last two pages, the summary plan, the SPD, as a summary of the insurance benefits that are available. That's what it's called. For the district judge, that was enough to say that under Joby and Ringwald that the grant of discretion simply wasn't in the plan. At the bottom line, do you think those two cases support the district judge? I think if you remember from those two cases, Your Honor, both Ringwald and Joby, both of those cases cited the Schwartz case from the Seventh Circuit, the Schwartz case being one of the leading cases in this aspect of how the grant of discretion must occur. And both courts cited Schwartz for the same thing. They cited it for the language in Schwartz. The SPD must be an accurate summary of the plan, not an unnegotiated enlargement of the administrator's authority. That is to say, the purpose of the SPD, those two cases said, is to tell people what's in the plan, not to be the plan itself. And that's what this summary purports to do. If you read it, and it's in my brief, if you read it, most of the sections in that SPD tell the reader, this is going to be somebody who's trying to figure out what the heck is going on in this plan, where to go in the policy terms to find out the answer. Things like claims processes, how claims are going to be reviewed, things of that nature. There is only one paragraph in the SPD, it's about four pages long, or two pages long, there's only one paragraph that says anything about discretion. And that's on page 62 of the joint appendix. If you don't have that in front of you, it's on page 20 of my brief. And it says this, this paragraph says this, authority to interpret policy. By purchasing the policy, the policyholder grants us the discretion and the final authority to construe and interpret the policy. And the rest draws on that. Think about that statement in a summary of a plan. First of all, Mr. Tolkien earlier said this is just a case of contract interpretation. Well, I sort of agree. And this is a contract. It's a contract between the insurance company and the policyholder, which isn't my client. It's the employer, her employer. And look at that statement. By purchasing the policy, the policyholder grants us the discretion to construe the plan. That isn't true. Just because the policyholder purchased a policy does not, as a matter of contract law, mean that the administrator now has authority to interpret the plan in any particular way. What do you think it does mean? I think it means nothing. I don't think it's a grant of discretion. I think it's a statement that's simply not true. If you look at the other cases, all of those cases where there was some question about whether there was a grant of discretion, at the very least, the paragraphs said things like, the administrator is granted discretion to do this, or the policy grants the administrator the discretion to do this. This language doesn't say it. It is telling something to a reader. And what it's telling to the reader, the reader being my client, Vicki Johnson, what it's telling the reader is wrong. It isn't true that just because the policyholder purchased the policy that the administrator of this now has discretion to interpret it. As a statement of contract law, I teach contracts. As a statement of contract law, that's just wrong. But more importantly, more importantly, consistent with the cases in this circuit, it's inconsistent with what our courts have said, that the purpose of this summary is to tell people basically fairly what is going on in the policy. And this doesn't do it. Because anybody looking at this would look back at the policy, whether it's in the certificate or in the policy itself, will look back at it and try to find anything about discretion. That person would probably go to the part of the policy that talks about claim review and claim payments and denials, and those sections, while they do talk about what happens when claims are made and how they're reviewed, says nothing about granting discretion. Look at it from the employer's point of view. The employer of Vicki Johnson liked Vicki Johnson. The employer went out of the way in 2006 to modify Vicki's workload so that the employer could accommodate her degenerating spine condition, which I'll talk about in a moment, so that she could work out of her home rather than traveling all around Nebraska and surrounding states. The employer did it because Vicki was a good employee. My guess is that that employer might be a little surprised to find out that just because it bought a policy of insurance from United, it gave United this authority to interpret the policy. It seems to me we should demand at the very minimum that there be somewhere where that discretion is granted. Is the summary plan description that you're referring to, is it part of the certificate? No, I don't think it is, Your Honor. Then why does on the first page of the summary plan description it says, this certificate is your ERISA summary plan description? What do you suppose somebody reading that would understand that to mean? It says this certificate. Might they not think this page that they're reading right there? As you said earlier, Your Honor, it's not exactly clear what certificate means in this policy. Somebody reading it might interpret that as meaning, okay, this is the summary. That's what it's titled in this piece of paper. They might equate certificate with piece of paper. Well, if it were concluded that the certificate is this entire group of pages, in line with my conversation with counsel a few minutes ago, and that the summary plan description is part of the certificate, doesn't the plan or the policy incorporate the certificate? The policy says, and the opening pages of the policy does say that it incorporates the certificate, but it also says that the certificate is subordinate to the terms of the policy. Now, how do you make sense of that, Your Honor, except to say that basically in this certificate are two things, the terms of the policy, the grant coverage and defined coverage and defined disability, and other things. The certificate is incorporated into the policy to the extent it has policy terms into it. To say that the policy, by incorporating the certificate, incorporates the SPD at the end, is to basically put the cart before the horse, because the purpose of the summary, this was there as the first line of the SPD says, it says we are doing this because ERISA law requires us to give you information. It doesn't say it's part of the insurance policy. It doesn't say it's part of the plan. It says we're doing this because we're required to give you information. And that's right. That's what ERISA is designed to do. To call that the plan seems to me to be putting the cart before the horse. So do you think that the certificate of insurance is simply the single page that is entitled in that way? I think the certificate includes the terms of the insurance policy. If we were to find this insurance policy in a case that wasn't governed by ERISA, we would find an insurance policy, including the disability provisions that are in this, in that policy. And that, in my mind, is the insurance policy. Well, I mean, looking at the documents that we have here, if I ask you, identify for me, turn to the pages that make up the certificate of insurance, how many pages would that be and what would be those pages? I would stop at the page that begins summary. So you would not include that? I wouldn't because that's there because ERISA law says it's supposed to be there. But I want to harken back to what I said earlier, Your Honor. If someone were to say, well, we disagree with you, Mr. Anderson, we think that's part of the plan, then I would say, okay, what does it mean? And I think it means nothing. Going back to your cart before the horse argument, if this had been placed as the first page of the document, then your argument wouldn't hold water, right? That would be the horse before the cart, right? Your Honor, here's what I understand ERISA to require as interpreted by the Supreme Court and this Court. In the plan, there has to be a grant of discretion to the administrator. We all will agree with that. And so I would ask the question, where does the grant of the discretion to the administrator sit? Does it sit in the policy? If it does, if the policy is the plan, then it's there. But if it sits somewhere else, Your Honor, then it isn't there. I think it's a simple question. And this one sits somewhere else. And once again, it sits on an empty. The saddle is empty on this horse because this is not a grant of discretion by any interpreter. Mr. Anderson? Yes, sir. If this Court reviews using an abuse of discretion standard, is the evidence such that your client can still prevail? I think it is. Would you highlight what would indicate that their discretion as an administrator was abused? Yes, Your Honor, I will. I would like to begin that highlight by reminding the Court to look at both the denial of Vicki's initial claim for disability and the denial letter by the review. In the initial claim, the denial was heavily accented towards mental distress, mental anxiety, stress, that sort of thing. And it concluded by saying, and you haven't shown us that you're going to go on a psychiatric treatment regimen. That was the initial denial. In the review, which is about a five-page document, the person reviewing says, we reviewed 17 sources, and it lists them. Only one of those sources, Dr. Buscardin's peer review, is actually cited and relied upon by the administrator for denying the appeal. And in that, what is highlighted is Dr. Buscardin's conclusion that there is a, quote, conclusive evidence that the kind of pain that Vicki Johnson suffers caused her disability. Well, characterize Dr. Buscardin's view versus the other 16 items you say were ignored. What did they consist of? The other 16 items consisted of mainly information provided by us, by Vicki. There is a reference to a vocational assessment, but there was no vocational assessment by United. That consisted of one sentence in which someone said, the title we should give to her work is similar to a clerk. That's it for vocational assessment compared to Ms. Freeman's assessment that was done by a professional vocational assessor and went through the appropriate steps. But I think what's important is that there's clear evidence from Dr. McConnell's work on Vicki Johnson. Both when he did the initial surgery and in the three or four sessions in follow-up in which he said quite clearly that she's got spinal stenosis. She's got a debilitating, deteriorating spine condition that extends, radiates down through her arms. It causes extreme pain and it is a physical condition that will lead to more surgery. That's his opinion. Dr. Buscardin's peer review didn't disagree with that. In fact, he said that Vicki must have some pain. She will have some limitations. She will have some discomfort because he agreed with the physiological evaluation of Dr. McConnell. What he didn't agree with, or agree isn't the right word because Dr. McConnell didn't have an opinion about this. What he didn't agree with was that Vicki really is suffering the pain that she is claiming. He did this because, gosh, all these years she hasn't been taking stiffer narcotics. Well, the fact is that she has been visiting her doctor, her personal physician, all of that time between 2004 and 2006, 2009 when she ended her employment. She was taking drugs and she was dealing with the pain and it was getting worse on a regular basis as every doctor who has seen her would agree. It seems to me Dr. Buscardin is going way beyond what he's qualified to say. As the district judge said, when he concluded that Vicki just isn't suffering that much pain. All of the physiological conditions that he agrees she suffers from indicate that there is some pain. He agrees that there are limitations that she will suffer. It seems to me that what United should have done is conducted a vocational assessment to see whether or not this admitted physiological condition that Vicki is suffering from would in fact cause the kind of pain, discomfort and intolerable pain and discomfort that would make it impossible for her to perform her job. And they didn't. So at the bottom line here you say that there is an issue of depression then in this long-term disability claim? I think that the best way to answer that, Your Honor, would be to read Vicki's statement when she appealed the denial. And what she said was, yeah, I get depressed, but who wouldn't? She's lost her ability to work. She tried very hard to work. She talked her employer into giving her another shot at a different kind of employment. So if you read that letter you'll see that, yeah, of course there's some depression, but what's really the essence of her disability claim is that she can't do it because of the debilitating spinal stenosis, the fibromyalgia and the other debilitating spinal conditions and arthraphy that she's having. I'm sorry I've overstepped my time. Thank you for the patience. Thank you. Thank you, Mr. Anderson. How much time does Mr. Falcon have remaining? He has three minutes, Your Honor. All right. Mr. Falcon, you may conclude your argument. Thank you, Your Honor. I think counsel's argument highlights one of the problems here. When you said that the grant of discretion in the certificate means nothing, it has to mean something. It's there in black and white. It says it grants united discretion. To say that it means nothing, which essentially is what the district court held, is that, well, it's not really part of the certificate so it means nothing here, is not correct as a matter of law. It's in the certificate. The certificate is the policy. It's integrated in. It's not subordinate to, as counsel says, what the policy says is essentially that it's integrated into it. So the policy is the plan. It grants discretion. With respect to what the findings were with respect to basically the merits of whether there's a substantial or whether there was any substantial evidence in the record, what we have is Ms. Johnson, again, having these conditions. And we don't deny she has these conditions. We don't deny the diagnoses. What the issue is, was there objective evidence that she had restrictions and limitations that prevented her from working in a sedentary capacity? That's the issue. Dr. McDonald said yes, but Dr. McDonald, who is her treating physician, did zero in the form of tests to verify that. She saw her on February 26th after Ms. Johnson had already quit her job in the morning and came in and said, I can't handle it. Dr. McDonald said, diagnosed her as having depression and immediately filled out the short-term claim form saying she's disabled because of that reason. Now, counsel said that she had consistent treatment in the years prior, but the evidence doesn't support that. In fact, in the four years prior to quitting her job on February 26, 2009, there's not a single record saying that she had treatment for chronic pain. Now, her claim here is, I can't work because my pain is a 10 on a 10 scale. But in four years prior to quitting her job, she had no medical treatment for that. She goes to see Dr. McDonald. Dr. McDonald performs, according to her own record, a blood pressure test and no further physical examination. She then treats with Dr. McDonald about three or four times between then and October. And again, Dr. McDonald never performed a physical evaluation, a functional capacity evaluation to determine, could she sit for eight hours a day? And that was her job. Her job was to sit and type at a computer or answer the phone for eight hours a day, according to her own testimony. So we don't disagree that she has certain limitations and restrictions from her surgery. What the dispute here is, is there any objective evidence that she can't perform the physical duties of her job? Is that with or without two Advil? I guess I don't know the answer to that. I mean, Dr. Boskarden said there's no restrictions. So there's no physical evidence of what the restrictions are. And that wouldn't make any difference in your argument? I don't think so. I think you've got to have a basic finding and some objective evidence that she can't perform this job, and they didn't produce any. And so we would ask that the court reverse the decision in the district court, vacate the judgment, and revamp with directions to enter judgment in favor of the United States. Thank you. Thank you, Mr. Falcon. Thank you also, Mr. Anderson. The court wants you to consider your case submitted. We will render decision in due course. Thank you.